OSCAR T. CROSBY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 51317, 60916.   Promulgated April 26, 1933.

*Oscar T. Crosby*, pro se.
*T. M. Mather, Esq.*, and *R. H. Transue, Esq.*, for the respondent.

OPINION.

ARUNDELL: The respondent determined deficiencies in income tax for the years 1927, 1928 and 1929, in the respective amounts of $2,938.52, $4,407.89 and $1,066.08.   Docket No. 51317 relates to the years 1927 and 1928, and No. 60916 to the year 1929.   The two cases were tried separately, but as the principal issue is the same in each. one report will suffice for both cases.

The issue common to both cases is whether income may be divided between petitioner and his wife on a community property basis. Respondent proposes to tax it all to petitioner.   In Docket No. 60916 petitioner claims a bad debt deduction consisting of interest on defaulted notes, and a loss on the sale of a house.

The evidence in both cases consists entirely of the testimony of the petitioner.   Much of the time devoted to the hearings was taken up by petitioner's statement of his views on the law, and the stenographic transcripts of the proceedings, running something over sixty pages, contain but few facts.   From a careful study of the transcripts we are able to piece out the facts set forth in the following three paragraphs.

Petitioner and his wife were married in the State of Louisiana in 1885. At that time neither of them had any separate property. Petitioner left Louisiana in 1886 and went to New York. He returned to Louisiana in 1890 and remained about a year and a half. Between 1885 and the taxable years petitioner spent considerable time abroad in various countries, including Europe, Asia, Africa, and South America. He returned at intervals to the United States. During some of his periods of absence his family resided in France. He was in Africa nearly all of 1927 and in that year and in 1928 his domicile was either in the District of Columbia or Virginia. During those years his family resided in those two jurisdictions. For many years prior to 1929 petitioner owned real estate in Virginia and in 1929 his domicile was in that Commonwealth. The income which is the subject of these proceedings was from dividends and interest on stocks, bonds, and other securities, and profits from trading in securities. The property upon which the income was realized was acquired between 1885 and the taxable years. Petitioner and his wife filed separate returns for each of the taxable years with the collector at Richmond, Virginia, dividing the income equally between them.

In 1928 there was deeded to petitioner a house and lot in Florida in satisfaction of a note for $1,000. Petitioner sold the property in 1929 for a stated consideration of $500, out of which he was required to pay expenses of $330.73, leaving a net amount received of $169.27. Petitioner claimed a loss of $800 which was disallowed by respondent with the explanation that the property had no greater value when acquired by petitioner that when sold in 1929.

In his return for 1929 petitioner claimed bad debt deductions amounting to $9,330. The respondent allowed as a deduction the face amount of the debts in the sum of $5,750, and disallowed the balance, consisting of accrued interest.

Petitioner does not claim to have been domiciled in Louisiana during the taxable years. His contention is that by reason of his marriage in Louisiana—a community property state—all property thereafter acquired during the existence of the marriage became community property, regardless of the place of domicile.

Upon the record made we are unable to find any facts as to petitioner's domicile when he acquired the property from which he received income in 1927, 1928, and 1929. Assuming that the matrimonial domicile was in Louisiana for a year or so following the marriage, petitioner does not claim that the property was acquired then. The respondent has found " that practically all of the property * * * was acquired while you and your wife were domiciled in other jurisdictions than Louisiana." (Deficiency notice in Docket

No. 51317.) As petitioner's evidence is insufficient to overcome this finding it must be taken to be a fact. While it may be, as claimed by petitioner, that some of the foreign countries in which he spent some time have community property laws, he did not establish his claim sufficiently to help his case. We do not take judicial notice of foreign laws and petitioner did not prove them. Nor did he establish residence or domicile in any foreign country so as to make its laws operative either as to him or his property.

One of the fundamental rules respecting personal property is that the rights of husband and wife in the property are determined by the law of domicile at the time of acquisition. See *Norman De Vaux*, 14 B. T. A. 205, 207. In case of change of domicile, " acquisitions subsequent to the change are governed by the law of the new domicile." Wharton, Conflict of Laws, §196, citing numerous cases. This author, Wharton, quotes the rule as stated in Burge's Colonial and Foreign Laws, pt. 1, ch. 7, §8, as follows:

If the law of community be a real law, its power as to personal property cannot be more extensive than as to real property. As it affects only such real property as is actually situated in the country where it is established, so it affects personal property only when its owner is actually domiciled in the country where such law is established, because the place of his domicil is the *situs in fictione juris* of his movable property. The real law as to personal property is that which prevails in the place of the owner's actual domicil. He acquires and holds it according to the disposition of that law, and it depends on that law whether he and his wife acquire it for their joint benefit, or for his sole benefit.

This appears to be the rule adopted by the courts of Louisiana, and applied not only to property physically beyond the borders of the state, but even to property therein if the domicile of the spouses, at the time of acquisition, was in a foreign jurisdiction. *Saul* v. *His Creditors*, 5 Mart. N. S. 569; 16 Am. Dec. 212; *Succession of Packwood*, 9 Rob. (La.) 438; 41 Am. Dec. 341.

Under these rules it would seem clear that the community property laws of Louisiana did not attach to property acquired by petitioner after he abandoned his domicile in that jurisdiction, and, upon his failure to establish that the law of the domicile at the time of acquisition bestowed any rights in the property on his wife, we are bound to affirm the respondent's finding that the property here involved was petitioner's separate, and not community, property. We accordingly sustain the respondent's taxation of income to the petitioner.

When petitioner took a deed to the Florida real estate in 1928 in satisfaction of a note, he realized a gain or sustained a loss at that time, dependent on the then value of the real estate. The respondent disallowed the loss in 1929 on the ground that the property

was worth no more in 1928, when acquired, than in 1929 when sold. The 1929 sale established the value in that year and this, under the respondent's finding, may be taken as the value in 1928. Accordingly, the petitioner is entitled to a loss deduction for 1928 of the difference between the amount of the note, $1,000, and the amount of $169.27.

The remaining question is whether petitioner may deduct the accrued interest on debts that became worthless in 1929. The respondent allowed a deduction for the principal of the notes but disallowed the interest. It appears that petitioner kept his accounts on the cash basis; at least he concedes in his brief that he was not on the accrual basis. In this situation, it has been the established rule ever since the decision in *Charles A. Collin*, 1 B. T. A. 305, that the accrued interest may not be deducted.

*Decision will be entered under Rule 50.*