UNITED STATES *v.* GRUEN WATCH Co. (No. 3609) [1]

United States Court of Customs and Patent Appeals, November 6, 1933

*Charles D. Lawrence,* Assistant Attorney General (*Ralph Folks* and *William Whynman,* special attorneys, of counsel), for the United States.

*James R. Ryan* for appellee.

[Oral argument October 5, 1933, by Mr. Folks and Mr. Ryan]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

There is no dispute about the facts in this appeal. It presents as the sole issue a question of law, viz: Is article 976 of the Customs Regulations (1923), requiring that drawback entries and certificates of manufacture on customs form 7575 be filed in duplicate within two years of the clearance of the exporting vessel or conveyance, a valid regulation.

[1] T.D. 46761.

The imported merchandise consists of 495 watch movements imported from Switzerland by the appellee herein. The movements were placed in cases of American manufacture and exported to various countries under customs supervision, with the view of obtaining drawback. Drawback entry was filed, and all the requirements of section 313 of the Tariff Act of 1922 were complied with. The drawback entry was not completed within the two-year limitation provided by said article 976 found in the Customs Regulations of 1923, the pertinent provisions of which article are as follows:

ART. 976. *Completion of drawback claims—Entry and certificate of manufacture.—* A drawback entry and certificate of manufacture on Customs Form 7575 shall be filed in duplicate within two years from the date of clearance of the exporting vessel or conveyance. The entry, which may include several shipments covered by notices of intent, each shipment constituting a claim within the meaning of this article, must when filed be complete as to all documents necessary to the liquidation thereof, including certificates of delivery of imported material and certificates of delivery of manufactured or partly manufactured articles, and all necessary official documents issued from one customs officer to another must be applied for prior to filing the entry. A statement in duplicate of the papers filed and showing the dates when official documents were applied for may be presented with the drawback entry. When such statement has been verified as to the papers filed, one copy shall be receipted and returned to the claimant and the other copy shall be attached to the drawback entry. The landing certificate, if one is required, shall be furnished prior to the liquidation of the entry.

\*       \*       \*       \*   .   \*       \*       \*

Claims for drawback not completed within the two years above prescribed, shall be treated as abandoned.

The collector, because of appellee's failure to comply with said regulation, disallowed the claim for drawback, and a timely protest was filed against such action.

The United States Customs Court, First Division, McClelland, Judge, dissenting, sustained the protest upon the authority of the case of *United States* v. *Comey Brooklyn Co.*, 16 Ct. Cust. Appls. 248, T.D. 42843.

The Government has appealed here and contends that the regulation is valid and has the force and effect of law, and that appellee's failure to comply with the same afforded full justification for the disallowance of drawback by the collector; that the *Comey Brooklyn Co.* case, *supra*, is not controlling of the issues herein, inasmuch as the regulation at bar is administrative and not legislative, and that the placing of a two-year limitation upon the filing of the entry was not in the nature of providing a statute of limitations. It is argued by the Government that the regulation was merely an effort to effect a proper balance of credits and debts between the claimant and the United States, and that it is reasonable in every particular. It also argues that the said customs regulation is valid because of long-continued administrative practice, and a number of cases are cited

as bearing upon the subject, discussion of which, in view of our conclusion, will not be necessary here.

The appellee, importer, argues in support of the correctness of the decision of the majority of the court below, and urges that said regulation has the same effect as a statute of limitations, and as such the issue is controlled by the case of *United States* v. *Comey Brooklyn Co.*, *supra*, and that the issue herein is by virtue of said decision made *stare decisis*; that long-continued practice cannot validate a regulation which was invalid or void from its inception; that even if administrative practice in this case was found to be as the Government contends for (which appellee does not admit), it has no application to the facts and issues in the instant case and is a rule applied only in the interpretation of valid provisions in cases of ambiguity.

The pertinent provisions of section 313, Tariff Act of 1922, follow:

Sec. 313. * * * The imported merchandise used in the manufacture or production of articles entitled to drawback of customs duties when exported shall, in all cases where drawback of duties paid on such merchandise is claimed, be identified, the quantity of such merchandise used and the amount of duties paid thereon shall be ascertained, the facts of the manufacture or production of such articles in the United States and their exportation therefrom shall be determined, and the drawback due thereon shall be paid to the manufacturer, producer, or exporter, the agent of either, or to the person to whom such manufacturer, producer, exporter, or agent shall in writing order such drawback paid, under such regulations as the Secretary of the Treasury shall prescribe. * * *

If the regulation should be looked upon as a statute of limitations, the provision for which was a prerogative of the legislative body rather than an administrative duty, procedural in nature, authorized by Congress, we can see no escape from the correctness of the conclusion of the majority of the court below, and of the contentions of the appellee herein.

We are inclined to believe, for reasons hereinafter set out, that the regulation, insofar as the two-year limitation is concerned, is not in the nature of a statute of limitations such as was the regulation involved in the *Comey Brooklyn Co.* case, *supra*, but on the contrary we conclude that it was an administrative act fully justified and authorized by Congress for the purpose of establishing an orderly and proper procedure in connection with the administration and carrying out of customs laws.

The *Comey Brooklyn* case, *supra*, involved the validity of article 960 of the Customs Regulations of 1923, which, in substance, as amended, provided a three-year limitation from the date merchandise was entered for consumption or withdrawn from warehouse until the merchandise could be identified for exportation and drawback. This court, after setting out section 313 of the Tariff Act of 1922 relating to drawback, pointed out that in said section a definite right was given to the importer of merchandise, the purpose of which, the

regulation, if enforced, would defeat rather than carry out. The court called attention to the fact that under then-existing law the merchandise might remain in the warehouse for not more than three years. To require that such merchandise be manufactured, identified, and exported within three years would, to that extent, defeat the purposes of the drawback provision. The court held that the fixing of a time limit for identifying and exporting merchandise which had been entered for consumption, for drawback purposes, was the prerogative of Congress and that the regulation was invalid, since it denied a right to the importer which Congress had granted.

No question of the length of time in which the importer had the right to manufacture and export his goods is involved in the instant case. The regulation in no way affects his right to manufacture and export with the privilege of drawback. It does, in effect, say that having imported the goods and having manufactured them, and having had them identified, he must file his entry and identify himself within two years from the date of exportation and permit such a checking up on the transaction as would warrant the payment of the drawback. When his goods were identified and exported under customs supervision, his right to receive payment of drawback money had fully accrued. No one contends that a requirement (after the accrual of such right) that he file papers in a certain form which would afford identification of himself and an opportunity to check the necessary facts of the whole transaction would deprive him of the right given. If, after his right to drawback has accrued, he may be deprived of receiving same because of his failure to comply with a procedural requirement, we see no good reason why fixing a reasonable time limit in which he must file his entry papers is not a valid requirement.

We are not impressed with the argument of the Government that the issue in this case is controlled by legislative practice. No authority has been cited, and we have found none, to the effect that legislative silence may validate an invalid regulation. If the regulation is invalid, the silence or absence of affirmative action on the part of Congress, in our judgment, cannot be regarded as a sufficient circumstance to warrant a holding that it is in fact valid. We think it proper to say, however, that it must be apparent to all that during the long history of American customs legislation, it was clear to Congress that it could not, in any given tariff act, make full and complete provision for carrying out and applying the subject matter of such tariff acts, and that much of the detail in connection with importing, entering, and levying duty upon imported merchandise, would have to be left in the control of the Treasury Department or some other agency, and that this was especially true where some special privilege or right was granted to the importers of merchandise.

It appears to be clear from the decided cases, and from the very nature of the subject matter, that Congress never evidenced a disposition to delegate any of its legislative powers to any administrative agency. But, it seems equally true that it has evidenced a disposition to rely very largely, in customs legislation, upon the Treasury Department for the promulgation of rules and regulations which would make possible the proper application of the laws.

The courts have held too frequently and too emphatically to admit of a contrary holding here that when such reasonable rules and regulations are adopted they have the force and effect of law. A regulation of the Treasury Department should not be stricken down, should not be held invalid, unless it is clear that it is unreasonable or is made outside of the authority granted. *Fawcus Machine Co.* v. *United States*, 282 U.S. 375, 378.

In the case at bar, the right of the importer to export its goods and have them identified and thus establish the basis of its claim for drawback is in no wise affected by the two-year provision under discussion. The regulation provides that after all said steps have been taken, the importer must, within two years from the date of the clearance of the exporting vessel, file the entry, together with certain papers, all of which affords information requisite for the proper liquidating of the entry. It seems to us that the filing of the entry and papers such as is required by the regulation is similar in some respects to presenting the details of a bill for payment. That the two-year period is a reasonable length of time in which to file such entry is not questioned.

Statutes, State and Federal, grant privileges to citizens contingent upon their filing actions in courts of law. The courts require such citizens to conform with certain rules. In appeals, they must file their records and briefs within a certain time, or else they may be effectually put out of court and their original right taken away, although the legislature gave no such power. While the powers of a court to adopt rules for the conduct of its business may rest on a somewhat different basis from those of an administrative agency, the question of the reasonableness of the same, and the question of taking away of a right given by the legislature is common to both.

Under the Tariff Act of 1913, and other prior tariff acts, the right of remission of duties was left to the Secretary of the Treasury. Under the act of 1922, by section 489, Congress provided that duties might be remitted upon petition filed, and under such rules as the Board of General Appraisers (now the United States Customs Court) might direct. That court adopted a rule, No. 35, requiring that the petition for remission of additional duties be filed within 60 days from liquidation. This court in *United States* v. *Bright & Co.*, 19 C.C.P.A. (Customs) 295, T.D. 45468, held that the rule was a fair, proper,

reasonable and valid rule. There it was argued that such a rule was a statute of limitations made by the United States Customs Court, and that the promulgation of such a rule was the exercise of legislative authority rather than administrative or judicial, and that it effectually deprived importers of merchandise of the right of remission, by prescribing such time limit as Congress had not seen fit to make. We think that decision was sound, the making of the regulation being within the power conferred by Congress by the term in section 489 "under such rules as the board may prescribe." It will be noted that the same language is used in section 313, *supra*, in authorizing the Secretary of the Treasury to prescribe regulations.

It may be pointed out that in the *Bright & Co.* case, *supra*, the power of a court was involved as distinguished from the facts at bar where the powers of the Secretary of the Treasury are involved. In some instances there may be a distinct difference in the powers of two such bodies with reference to the adoption of rules, but as far as taking away a substantive right granted by Congress is concerned, the Board of General Appraisers (later the United States Customs Court) had no more power in this respect than has the Secretary of the Treasury.

Of all the cases cited and discussed, the case of *MacNichol Packing Co. et al.* v. *United States*, 14 Ct. Cust. Appls. 400, T.D. 42050, seems to be the most applicable and controlling in the decision of the issue at bar. That case involved the validity of a regulation made in connection with the application of that part of section 313, Tariff Act of 1922, providing for a refund on salt, imported in bond, when used in curing fish taken under certain conditions. The applicable Treasury regulations provided that the bond under which the salt was imported and entered in warehouse might be canceled if it was established that the salt was so used, proof of which fact was required to be presented on or before the first day of January next after the date of the bond. It also provided for an extension of the bond upon application. The importer of the salt did not present his required proof to the collector within the time fixed by the regulation and made no request to extend the bond. More than one year after the same was due, the importer tendered proof that the salt had been used as provided in the section, and asked for remission of duties. The collector refused on the ground that he had not asked for a renewal of the bond, and had tendered his proof too late. This court, after citing numerous authorities, in which certain regulations were held valid, held that the regulation then at bar was valid, and said:

From these authorities, the rule is deduced that where the Congress has offered some special grace or exemption to an importer, under regulations to be promulgated, the importer must strictly comply with such regulations, so long as they be reasonable and do not seek to alter, add to, or detract from the statute itself. And this rule is one that recommends itself to our reason. If this importer is to have some special privilege which is not extended to importers of salt for other

purposes, then he cannot complain if he is required, as a part of said privilege, to comply with such regulations as have been here made, *regulations which plainly only have in mind an annual accounting between the importer and the Government.* (Italics not quoted.)

In the *Comey Brooklyn Co.* case, *supra,* the Government relied on the *MacNichol Packing Co.* case, *supra.* In the opinion by Judge Barber, the *MacNichol Packing Co.* case was discussed somewhat at length, and the facts in that case were distinguished from the facts in the *Comey Brooklyn Co.* case by the use of the following language:

* * * It will be observed that the case did not involve merchandise manufactured from imported materials and then exported, and further, that, as already pointed out, section 557 provides that merchandise in bonded warehouse may there remain not more than three years. We find nothing in that or any other of the cases cited by the Government that controls the issue here.

We think the facts in the *Comey Brooklyn Co.* case may be distinguished from the facts at bar in substantially the same way as was pointed out in the *Comey Brooklyn Co.* case. The *Comey* case involved a regulation which required the manufacture, identification and exportation of goods within a given time. If the merchandise remained in bonded warehouse, it was clear that the time was not sufficient, and the regulation as to goods of this character was clearly unreasonable and invalid. In the *Comey* case, the court said that there was no manufacturing and exporting of merchandise involved in the regulation in the *MacNichol* case. That is true in the instant case. The regulation here does not involve a requirement that the goods must be manufactured from imported goods and *exported* within a given time. If we were sound in the *MacNichol* case in the view that a regulation having in mind an accounting between the importer and the Government was valid when it required the filing of proof within one year, the regulation at bar, which fixes a two-year period within which to file the entry, should be held valid. If the court reached the right conclusion in the *MacNichol Packing Co.* case, and we are sure that it did, we see no escape from the conclusion that we must hold the regulation at bar a valid exercise of the authority conferred by Congress, and we so hold.

The judgment of the United States Customs Court is *reversed.*