## CANNON VALLEY MILLING CO. v. UNITED STATES.

### Civ. No. 754.

District Court, D. Minnesota, Fourth Division.

March 6, 1945.

Victor E. Anderson, U. S. Atty., and Linus J. Hammond, Asst. U. S. Atty., both of St. Paul, Minn., for defendant.

John W. Windhorst and Dorsey, Colman, Barker, Scott & Barber, all of Minneapolis, Minn., for plaintiff.

Claude W. Dudley, of Washington, D. C., amicus curiæ.

JOYCE, District Judge.

This suit is for the recovery of taxes and interest paid under protest. The taxes were levied under Titles VIII and IX of the Social Security Act, 42 U.S.C.A. §§ 1001 et seq. and 1101 et seq., and Sections 1400 et seq. and 1600 et seq., of the Internal Revenue Code, 26 U.S.C.A. Int.Rev. Code, §§ 1400 et seq., 1600 et seq., generally known as the Federal Insurance Contributions Act and the Federal Unemployment Tax Act. These statutes require the imposition of a tax on the wages of employees. The taxes involved here were assessed on commissions paid by plaintiff to brokers who sold its products. The only issue is whether these brokers were employees within the meaning of the above-mentioned taxing statutes.

Plaintiff is a "merchant" milling company; that is, it distributes its products (flour and feed) nationally. The brokers involved are located in various middle western and eastern states. Some of them had written contracts with plaintiff, others had only working agreements; but there were no material differences in their method of operation. Each broker had his own office and solicited his own trade. Some of them were large concerns that represented several milling companies, others made few sales and apparently devoted only part of their time to the selling of flour and feed. Sales were usually made in carload lots. The broker would procure an order and forward it to plaintiff for approval and acceptance. The broker had no further connection with the transaction unless plaintiff had difficulty in collecting for the shipment. As the broker did not ordinarily receive his commission until payment was made he would assist plaintiff in collections if such an occasion arose. Aside from furnishing price information, plaintiff gave the brokers little assistance. Plaintiff exercised no control over the amount of time a broker was to devote to the selling of its products or to the manner in which sales were to be solicited. It paid none of the broker's expenses and required no reports on his activities. Brokers did their own advertising, paid their own employees and frequently employed sub-brokers without plaintiff's knowledge. Some were paid commissions on goods purchased for plaintiff and the tax was levied on these amounts also.

It should be mentioned that plaintiff does employ fulltime salesmen who are com-

pensated on a salary basis, make regular reports of their activities, receive expense allowance, and who are closely supervised by plaintiff. It is conceded they are employees, their taxes have been paid and are not involved in this litigation.

The statutes do not specifically define the term "employee" but the regulations do. 26 CFR, Cumulative Supp. section 402.204 and section 403.205 reads in part:

"Every individual is an employee if the relationship between him and the person for whom he performs services is the legal relationship of employer and employee.

"Generally such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. * * * In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor. An individual performing services as an independent contractor is not as to such services an employee. * * * "

■ The regulations speak of the "legal relationship" between employer and employee and seemingly adopt the common-law definition of those terms. American Oil Co. v. Fly, 5 Cir., 135 F.2d 491. In United States v. Vogue, Inc., 4 Cir., Nov. 13, 1944, 145 F.2d 609, the view is taken that the purpose of the Act requires a broader meaning be given to the term "employee" than the master and servant test as developed at common law. However, these divergent viewpoints are immaterial to this case. Both the American Oil Co. and the Vogue cases recognize that the tests prescribed by the regulations must be observed. The regulations are valid and should be followed unless unreasonable or inconsistent with the statute. Fawcus Machine Co. v. United States, 282 U.S. 375, 51 S.Ct. 144, 75 L.Ed. 397. The regulations in question are not so attacked.

The courts have not construed these statutes or regulations loosely. In American Oil Co. v. Fly, supra, an oil company had contracts with distributors who sold on commission, hired their own employees, controlled their own hours of work and the manner in which they sold the products. It was held the distributors were not employees for Social Security tax purposes although the oil company owned the storage tanks used by the distributor, fixed the amount of products to be shipped to him and reserved the right to inspect his books. See also Texas Co. v. Higgins, 2 Cir., 118 F.2d 636; Indian Refining Co. v. Dallman, D. C., 31 F.Supp. 455, affirmed 7 Cir., 119 F.2d 417.

In Burruss v. Early, D.C. W.D. Va., 44 F.Supp. 21, sawmill operators had contracts with a lumber company to furnish rough lumber at agreed prices. The operators did the logging, sawing and hauling. They hired their own employees and were not subject to the lumber company's control either as to amount of lumber to be cut or manner of operation although the lumber company owned the cutting rights and some of the saw mills. The operators were held to be independent contractors and not subject to the Social Security taxes.

■ Although each case depends on its own facts, the above-cited cases illustrate the application of the facts to the principles. In the case at bar, the brokers, in effect, conducted a business independent of plaintiff. They were not subject to plaintiff's direction or control in the means or methods by which their orders were solicited. Plaintiff was interested only in the result accomplished, that is, the orders obtained. The regulations are definite that that is not enough to give rise to the employer-employee relationship. The brokers in question were independent contractors for the purpose of the taxing statutes and the tax was erroneously imposed and collected.

Judgment will be for plaintiff in the amount of $4,225.25 with interest at six per cent from August 26, 1941. Findings of Fact, Conclusions of Law and Order for Judgment in accordance with the foregoing views will be filed, to all of which this Memorandum will be made a part.